## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ZACH WESTBROOK, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED, | § § § | |
| Plaintiff, | § § | |
| v. | § | CASE NO. 2:14-cv-00131 |
| ADVANCED SOLIDS CONTROL, LLC, | § § § | |
| Defendant. | § § | |

### WESTBROOK'S REPLY IN SUPPORT OF LEAVE TO AMEND

**1.    Summary.**

Zach Westbrook sued Advanced Solids Control for denying its solids control technicians the overtime wages required by law. Before the deadline set by the Court, Westbrook moved to amend his complaint to add similar claims under the New Mexico Minimum Wage Act (NMMWA). *See* Docs. 40 at ¶ 2 & 44. Although the liberal standard set by Rule 15 applies to his motion, no depositions have been taken, and Advanced is not prejudiced, it opposes the motion.

Advanced asserts this Court both "lacks supplemental jurisdiction over the NMMWA claims and should decline to exercise such jurisdiction" of the NMMWA claims. *See* Doc. 27 at p. 2. In support, Advanced claims: (1) FLSA collective actions are "incompatible" with Rule 23 claims under state law (though every appellate court to consider this argument has disagreed); (2) Westbrook's NMMWA claims are "preempted" by the FLSA (even though the FLSA contains an anti-preemption provision 29 U.S.C. § 218(a)); and (3) courts don't address Rule 23 certification after the close of an opt-in period in an FLSA collective action (even though they do it all the time). None of Advanced's arguments hold up against the case law, the language of the statute, or the facts. Westbrook's timely motion to amend should be granted.

**2.      FLSA Claims Aren't Inherently Incompatible With State Law Rule 23 Claims.**

As Westbrook noted at the hearing, Advanced's "incompatibility" argument "has not fared well at the appellate level." *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 258 (3d Cir. 2012). That's actually being generous, since "all circuit courts to consider the issue have held that the different opting mechanisms do not require dismissal of the state claims." *Busk v. Integrity Staffing Solutions, Inc.* 713 F.3d 525 (9th Cir. 2013) *rev'd on unrelated ground*, 135 S. Ct. 513, 190 L. Ed. 2d 410 (2014); *see also, Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 247–49 (2d Cir.2011) ("[W]e agree with the Seventh Circuit that ... 'the "conflict" between the opt-in procedure under the FLSA and the opt-out procedure under Rule 23 is not a proper reason to decline jurisdiction.'"); *Ervin v. OS Rest. Servs., Inc.,* 632 F.3d 971, 976–79 (7th Cir.2011) ("There is ample evidence that a combined action is consistent with the regime Congress has established in the FLSA."); *Lindsay v. Gov't Emps. Ins. Co.,* 448 F.3d 416, 424 (D.C.Cir.2006) ("While there is unquestionably a difference ... between opt-in and opt-out procedures, we doubt that a mere *procedural* difference can curtail section 1367's *jurisdictional* sweep."); *see also, Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 794 (8th Cir. 2014) (affirming verdict in FLSA collective action with Rule 23 class action under state law). Therefore, we shouldn't be surprised that most of Advanced's district court authority has been reversed.

Of course, Advanced claims it "disagree[s] with Plaintiffs interpretation" that "all but two of the cases cited by Defendants addressing the Circumvention Issue were 'reversed.'" *See* Doc. 52 at p. 4 (citing 4 out of circuit cases). But it offers nothing to support this assertion and, in fact, Advanced is just dead wrong. For example, Advanced cited a pair of Pennsylvania cases. *See* Doc. 47 at p. 3-4. Both cases held "the opt-in regime of § 216(b) is 'inherently incompatible' with the opt-out mechanism of Rule 23." *Woodard v. FedEx Freight E., Inc.,* 250 F.R.D. 178, 182 (M.D. Pa. 2008); *see also Bell v. Citizens Fin. Grp., Inc.,* No. CIV.A. 10-0320, 2011 WL 2261117, at *5 (W.D. Pa. June 8, 2011) (same). However, the Third Circuit later **rejected** "the conclusion that jurisdiction over an

opt-out class action based on state-law claims that parallel the FLSA is inherently incompatible with the FLSA's opt-in procedure." *Knepper*, 675 F.3d at 261. So there is no question that *Woodard* and *Bell* have been reversed in relevant part.

Another case cited by Advanced is actually an opinion **reversing** the decision to dismiss a plaintiff's state law Rule 23 claims. *See* Doc. 47 at p. 4 (citing *Daprizio v. Harrah's Las Vegas, Inc.*, No. 2:10-CV-00604-GMN, 2010 WL 5099666 (D. Nev. Dec. 7, 2010)). Because of a ruling from the controlling circuit court, the *Daprizio* court found its order "indicating that the state law class action is preempted [should be] VACATED." *Daprizio*, 2010 WL 5099666, at *3. The court expressly held the plaintiff could "attempt to certify both a state law class under Rule 23 and a separate FLSA class." *Id.* So whether Advanced "disagrees" or not, the truth is that most of the cases Advanced cites on this issue have been reversed.

Even in Circuits that haven't expressly overruled the argument underlying Advanced's cases, the "incompatibility" or "Circumvention" argument hasn't garnered a lot of respect. While the decision in *In re American Family Mut. Ins. Co. Overtime Pay Litigation*, 638 F.Supp.2d 1290 (D. Colo. 2009) has not been formally overruled, it has been politely rejected by several courts in its home district. *See, e.g., Lozoya*, No. 12-CV-1048-JLK, 2015 WL 1524639, at *1 n. 1 (rejecting *In re American Family*); *Bass,* No. 09–cv–01614–REB–MEH, 2011 WL 2149602, *5 (same). Thus, *In Re American Family* offers little support for Advanced's opposition to a motion to amend.

The one Texas case cited by Advanced did not deal with a motion to amend, but rather a motion for class certification. Even then, the Court did "**not** find that the FLSA's bar to a Rule 23 class prohibits the joint adjudication of a related claim organized under a Rule 23 class." *Jackson v. City of San Antonio*, 220 F.R.D. 55, 59 (W.D.Tex. 2003). Futher, the more recent cases in this Circuit – issued after extensive guidance from the courts of appeal – makes it clear NMMWA and FLSA claims can peacefully coexist. *See McLeland v. 1845 Oil Field Servs.*, No. SA-14-CV-1117-XR, 2015 WL

1206938, at *7 (W.D. Tex. Mar. 16, 2015); *See Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421, 429 (E.D. La. 2010) (While collective and class action "procedures are indeed different, but those differences do not justify remanding plaintiffs' state law claims. The requirement that class members opt into a collective action applies only to claims under the FLSA and does not limit the procedural mechanisms available to employees who bring state law actions"). In short, Advanced's "incompatibility" (or "Circumvention") argument fails.

3.     **Advanced's Preemption Argument Fails Too.**

The FLSA does not preempt state laws that are more protective of employees. 29 U.S.C. § 218(a). The NMMWA provides for a longer default statute of limitations, injunctive relief, and additional damages. N.M. Stat. Ann. § 50-4-26 (West). Moreover, courts have held the FLSA does not preempt the NMMWA. *See, e.g., McLeland*, No. SA-14-CV-1117-XR, 2015 WL 1206938, at *7.

4.     **Federal Courts are Capable of Handling State Law Issues.**

Advanced appears to believe there is something wrong with a federal court applying New Mexico state law. But between diversity and supplemental jurisdiction, as well as the Class Action Fairness Act, federal courts handle cases brought under the NMMWA on a regular basis. *See, e.g., Casias v. Distribution Mgmt. Corp.*, No. 1:11-CV-00874 MV/RHS, 2012 WL 4511364, at *1 (D.N.M. Sept. 26, 2012). Nor does it matter that a federal court in Texas, rather than a federal court in New Mexico, would be applying the NMWA. *McLeland*, No. SA-14-CV-1117-XR, 2015 WL 1206938, at *6-7 (denying request to dismiss NMMWA claims in an FLSA case); *Castillo v. Hernandez*, No. EP-10-CV-247-KC, 2011 WL 2489910, at *1 (W.D. Tex. June 17, 2011) (noting the Court was handling both FLSA and "New Mexico Minimum Wage Act" claims).

Federal judges are "experts on law" who regularly interpret the laws of foreign countries. *Cf. Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 633 (7th Cir. 2010) (Posner, J., concurring). The job here is fair less complex, as this Court would only need to apply the law of New Mexico, a sister

state to Texas. Texas' federal courts (indeed, all federal courts) do this all the time. *See, e.g., Johnson v. TDS Erectors, Inc.,* 426 F. App'x 241, 242 (5th Cir. 2011) (affirming application of Arkansas law by Texas federal court); *Cardoni v. Prosperity Bank,* No. CIV.A. H-14-1946, 2014 WL 4982600 (S.D. Tex. Oct. 6, 2014) (applying Oklahoma law); *Amoco Prod. Co. v. Hydroblast Corp.*, 90 F. Supp. 2d 727, 736 (N.D. Tex. 1999) *aff'd*, 226 F.3d 642 (5th Cir. 2000) (applying New Mexico law). So where "New Mexico law applies, the district court is quite capable of applying [that] jurisdiction's law." *IBEW-NECA Sw. Health & Ben. Fund v. Gurule*, No. CIV.A. 3:03-CV-0092, 2003 WL 21281652, at *5 (N.D. Tex. May 22, 2003) *report and recommendation adopted*, No. CIV.A. 3:03-CV-0092L, 2003 WL 22768659 (N.D. Tex. Aug. 1, 2003); *see also, McLeland*, 2015 WL 1206938, at *6-9 (Texas federal court asserting supplemental jurisdiction over NMMWA claims).

**5.      Rule 23 Claims Are Typically Addressed After Conditional Certification.**

In the undersigned's experience, it is the norm for Rule 23 certification issues to be taken up after conditional certification. The case law bears this out. *See, e.g., Lozoya*, No. 12-CV-1048-JLK, 2015 WL 1524639, at *1 (certifying Rule 23 state law class after close of the opt-in period); *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 317 (E.D.N.Y. 2014) (describing how Rule 23 class certification discovery and motion practice followed conditional certification); *Deane v. Fastenal Co.*, No. 11-CV-0042 YGR, 2013 WL 675462, at *1 (N.D. Cal. Feb. 25, 2013) (same); *Gardner v. W. Beef Properties, Inc.*, No. 07-CV-2345 NGG JMA, 2013 WL 1629299, at *2 (E.D.N.Y. Mar. 25, 2013) *report and recommendation adopted*, No. 07 CV 2345 RJD JMA, 2013 WL 1632657 (E.D.N.Y. Apr. 16, 2013) (same); *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632 (S.D.N.Y. 2013) (certifying Rule 23 long after the close of the opt-in period); *Ruffin v. Entm't of the E. Panhandle*, No. 3:11-CV-19, 2012 WL 5472165, at *1 (N.D.W. Va. Nov. 9, 2012) (same); *Bass*, No. 09-CV-01614-REB-MEH, 2011 WL 2149602, at *1 (same); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 268 (D. Conn. 2002) (same). This reality makes perfect sense given that conditional certification is generally decided prior

to discovery. *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012) ("discovery usually has not been conducted at [the conditional certification] stage"). In contrast, Rule 23 certification – which requires a far more rigorous analysis – typically takes only after discovery has taken place. *Cf. Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982) ("there can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to determine whether the prerequisites of Rule 23 are satisfied").

**6. Advanced's Assumptions about the Class Members are Unsupported (and Incorrect).**

A far greater percentage of workers (24%) joined this case than join the typical collective action. The empirical research found the average opt-in rates to be less than 16% in FLSA collective actions.[1] So it is hard to fathom why Advanced thinks Plaintiffs would be disappointed with this opt-in rate. *See* Doc. 52 at p. 3. But even more surprising is Advanced's suggestion that the Court should deny Westbrook leave to amend because the other potential class members have no interest in recovering their unpaid wages.

To begin, the most obvious reason for current employees not to join an FLSA collective action is fear of retaliation.[2] *Cf. Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (current employees are often reluctant to sue "for fear of workplace retaliation"). Moreover, many courts have noted that while "few if any persons who receive notice of a [collective] action opt [in]; … it is just as likely that the tiny number of opt-[ins] occurs because recipients ignore the notice (believing it to be "junk mail") or once seeing it, do not bother to read it." *Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, 2002 WL 1359411 (N.D. Ill. June 21, 2002) (in discussing Rule 23 opt-out

---

[1]     *See, e.g.,* Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 294 (2008) (finding the "average opt-in rate [after conditional certification] for the twenty-one cases analyzed … is 15.71%").

[2]     Janet M. Bowermaster, *Two (Federal) Wrongs Make A (State) Right: State Class-Action Procedures As an Alternative to the Opt-in Class-Action Provision of the ADEA*, 25 U. Mich. J.L. Reform 7, 51 (1991) (one reason opt-in participation is small is the fear of possible employer reprisal); James A. Rahl, *The Class Action Device and Employee Suits Under the Fair Labor Standards Act*, 37 ILL.L.REV. 119, 120 n. 10 (1942) (explaining that most suits under § 16(b) of the FLSA are brought by ex-employees).

notices). "[W]e should never treat inaction as a form of consent when consent is not the most likely

explanation for the inaction. Consumed with matters that impinge on ordinary life, most people

throw out notice letters without reading them, much less understanding them. It would therefore be

unreasonable to assume that class members' failure to [join] results from their considered choice to

[not] be represented by the named plaintiffs." John Bronsteen & Owen Fiss, *The Class Action Rule*, 78

Notre Dame L. Rev. 1419, 1420 (2003).

In fact, if certified as a Rule 23 opt-out class, studies tell us only 1% of the potential class

members will affirmatively opt-out. *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs

and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529, 1532

(2004). Advanced's proposed assumption would mean that 99% of the class members then made a

conscious decision *to participate* in the lawsuit by not opting out (despite allegedly making an earlier

"decision" not to). But the fact is that neither the failure to opt-out of a Rule 23 class nor the failure

to opt-in to a §216(b) collective action establishes what each of these class members has "decided."

There are lots of reasons why an employee's "failure" to return a consent should not be read

as a decision not to participate.[3] The notice may not have reached them, but not been properly

returned by the post office. The employee or a family member might have thrown the notice out

believing it to be junk mail.[4] The employee or a family member might have thrown the notice out

believing it to be another one of those class action notices that are too complicated to understand or

---

[3]     Deborah R. Hensler & Thomas D. Rowe, Jr., *Beyond "It Just Ain't Worth It": Alternative Strategies for Damage Class Action Reform*, Law & Contemp. Probs., Spring/Summer 2001, at 137, 146-47 (there is "reason to question the intuition that failing to respond to an invitation to participate in a process--for example, to opt in – necessarily connotes a preference not to participate").

[4]     "In the Court's experience, few if any persons who receive notice of a [collective] action opt [in]; though one could argue that this is because the vast majority of notice recipients make an affirmative decision to [not join] the case, it is just as likely that the tiny number of opt-[ins] occurs because recipients ignore the notice (believing it to be "junk mail") or once seeing it, do not bother to read it." *Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, 2002 WL 1359411 (N.D. Ill. June 21, 2002) (in discussing Rule 23 opt-out notices).

in which the class member gets only a *de minimus* amount or coupons worth next to nothing.[5] The employee may have lost the notice and not known where to get another.[6] Moreover, social scientists who have investigated the reason for low participation rates in an opt-in context have concluded that the vast majority of those who do not opt-in do not object to participating.[7] The reality is that there are a variety of reasons that an employee may not have joined this collective action that have nothing to do with a conscious decision not to participate.

## 7. Advanced Is Not Prejudiced by Westbrook's Amendment.

Finally, Advanced will not be prejudiced by Westbrook's amendment. Westbrook's discovery responses (issued before conditional certification) made it clear he intended to pursue New Mexico claims. No depositions have been taken. The discovery cutoff is still months away. Advanced will have the opportunity to contest both the exercise of supplemental jurisdiction and the merits of class certification. So all we are talking about here are the pleadings.

Further, most of the supposed "horribles" cited by Advanced will come to pass if Westbrook's motion for leave to amend is denied. After all, he will simply file a separate lawsuit in New Mexico state court. Thus, Advanced is going to face this opt-out class somewhere, and – through the supplemental jurisdiction statute – Congress has indicated it should be here.

---

[5] John Bronsteen & Owen Fiss, *The Class Action Rule*, 78 Notre Dame L. Rev. 1419, 1420 (2003).

[6] Hensler & Rowe Jr., *supra* note 3, at 47.

[7] Social scientists have investigated the difference in participation rates when subjects are alternately asked to consent actively (opt-in) or passively (opt-out) to research. Participation rates are much higher under a passive-consent regime because, typically, relatively small numbers come forward to object. The researchers found that most of those who do not sign up in an active-consent (opt-in) regime – and were therefore deemed objectors – in fact did not object to the proceedings at all and would have been happy to participate. They either never received the consent form, mislaid it, or were simply too busy to fill it out. Hensler & Rowe Jr., *supra* note 8, at 146-47 (discussing studies). See also Deborah Hensler, et al., *Class Action Dilemmas: Pursuing Public Goals for Private Gain*, 475-76 (2000) ("Social science research tells us that in many circumstances, when individuals are required to assent actively (rather than passively) to some procedure, fewer will do so although many of those who do not take action do not disagree with what is proposed.").

**8.** **Conclusion.**

Advanced doesn't want to be sued for its violations of the NMMWA. But that isn't the standard for evaluating a motion to amend. Westbrook's timely motion for leave to amend should be granted.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

**/s/ Rex Burch**

By: _____

Richard J. (Rex) Burch
Texas Bar No. 24001807
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
(713) 877-8788 – Telephone
(713) 877-8065 – Facsimile
rburch@brucknerburch.com

**CERTIFICATE OF SERVICE**

On July 13, 2015, I filed this document via the CM/ECF system which will send notification to all counsel of record.

**/s/ Rex Burch**

_____

Richard J. (Rex) Burch